## THE DIXIE.[1]

### ISHAM *et al. v.* A CARGO OF PINE PILES.

### VANDERBILT *v.* THE DIXIE.

#### (*District Court, S. D. New York.* June 2, 1891.)

1. **CHARTER-PARTY—BILL OF LADING, "MORE OR LESS"—CONSTRUCTION—DRAFTS.**
   The barge D. was chartered to load a cargo of piles to a specified draught. The shipper only kept tally of the loading, and presented to the owner a bill of lading for 400 piles, "more or less," which he signed, adding, "as per charter-party." The shipper mailed the bill of lading to the consignee, and on the same day drew a sight draft for $350, writing him that he had shipped 400 piles, and the draft was paid. The vessel loaded to the agreed draught, but with only 310 piles. *Held,* that the words "more or less" in the bill of lading, and the reference to the charter-party, absolved the ship from liability for the 90 piles short.
2. **DELIVERY OF FREIGHT—SECURITY—DEMURRAGE.**
   For cargo deliverable in the water along-side, security for the payment of freight may be demanded, or *pro rata* payment as the delivery progresses; and, on an agreement for "quick dispatch" in unloading, *held,* demurrage allowable for delay in giving security.

In Admiralty.

Libel for $1,000 freight, as per charter. Cross-libel for breach of charter and bill of lading. On February 13, 1891, Mr. Isham, on behalf of the owners of the barge Dixie, chartered her to W. L. Doughtrey to carry a full cargo of pine piles from Suffolk, Va., to Jersey City, N. J. The charter provided that—

"The cargo should be loaded and discharged free to shipper for the lump sum of $1,000, vessel to load 10 feet of water aft, and 8½ feet forward, if the piles would load her down to this depth. The cargo to be received and delivered along-side, within reach of the vessel's tackle. Eight working hours to load in. Demurrage $25 per day. Quick dispatch in discharging."

Mr. Doughtrey had been supplying piles to Messrs. Vanderbilt & Hopkins of this city, and had contracted to sell them, among others, 400 piles of a larger size, and 200 of a smaller size, with the right to draw drafts, to be annexed to the shipping railroad receipts, to the amount of $3.50 per pile so shipped. The Dixie was chartered for the purpose of transporting as many of these piles as she could carry. In the negotiations previous to charter the owners had refused to load any definite number. The loading of the cargo being nearly completed, on the 28th of February Mr. Isham, at Doughtrey's request, signed a bill of lading dated on that day for "300 pine piles, more or less, under deck, and 100

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

piles, more or less, on deck,—total, 400 piles; more or less,"—deliverable at Jersey City to Vanderbilt & Hopkins, they "paying freight for the said piles at the rate of $1,000 for piles delivered, as per charter-party." On the same day Doughtrey drew upon Vanderbilt & Hopkins at sight for $350 "for ad [vance] on 100 piles." He had previously drawn upon them two drafts, one for $507.50, and another for $511, on the 16th and 24th of February, respectively, with railroad receipts to him at Suffolk attached. The bill of lading of February 28th was not attached to the draft of that date, but was forwarded to Vanderbilt & Hopkins; and the draft was paid, as they claim, upon the faith that 400 piles had been shipped upon the barge. On delivery the cargo was found to consist of but 310 piles, and the consignees in their answer and in their cross-libel claim to recoup against the lump sum of $1,000, freight, their damages for the non-delivery of the missing 90 piles. They subsequently obtained from Doughtrey the 90 piles, but they claim as damages the expenses of transporting them from Suffolk, as well as the necessary expenses of a man sent to obtain them, and also certain consequential damages arising from the delay in supplying these piles to a Mr. Gillies, to whom they had sold them, and who, in order to fulfill his own contract, was obliged, as he says, to purchase the missing 90 piles at a higher price, in consequence of which he had claimed damages against Vanderbilt & Hopkins. Four days' demurrage was claimed for the barge for detention at New York before beginning to unload.

*Wing, Shoudy & Putnam*, for the Dixie.

*Holmes & Adams*, for cargo of pine piles.

BROWN, J. 1. The evidence shows that the barge took on a full cargo at Suffolk, both below deck and on deck,—more, in fact, than was altogether prudent at that season of the year,—and she delivered all that she received. Her charter obligation was therefore completely performed, and the lump sum of $1,000 freight was fully earned.

2. Upon the bill of lading I cannot find either that the vessel became responsible to Vanderbilt & Hopkins for 400 piles, or for any more than she had on board, nor that any legal damages are shown to have resulted, even if she had been liable for that full number. Not only does the bill of lading use the words "more or less" in connection with the numbers specified under deck and on deck, but the whole bill of lading was further conditioned by the words, "as per charter-party," inserted in writing as an express qualification of the whole. Neither the owner nor the master of the barge kept any tally of the number of piles loaded. They had no interest in the number. The charter was for a lump sum, and they had agreed only to take a full cargo. The tally was kept by Mr. Doughtrey. The bill of lading was signed for his convenience in the manner he chose to make it out, but with such qualifications as limited its provisions to the performance of the charter-party. I am satisfied, upon the evidence, that this was in accordance with the practice in that business at that place. Even if there were no such custom, or if the consignees had no knowledge of it, the qualification of "more or less" in

the bill of lading was alone sufficient to apprise them that they could not count upon the precise number of 400 piles; while the express reference to the charter-party was sufficient to put them on their guard, and would have shown that no definite number was contracted to be shipped, but only a full load, whatever the number might be. They, therefore, as much as Mr. Doughtrey, took the risk of the result of the loading. These provisions together were equivalent to the language often found in other bills of lading, "weight or number unknown," or "not accountable for weight or number," under which the vessel is only answerable for the delivery of what she has received on board. *The Querini Stamphalia*, 19 Fed. Rep. 123, and cases there cited; *McKay* v. *Ennis*, 37 Fed. Rep. 229–232; *The Pietro G.*, 39 Fed. Rep. 366, 40 Fed. Rep. 497.

As respects any damage suffered by the consignee, the evidence shows that the draft of February 28th was on its face drawn as an "ad [vance] on 100 piles" only. The previous drafts were accompanied by railroad receipts, a part of which did not specify the number of piles. Mr. Doughtrey's letter of February 28th, apprising Vanderbilt & Hopkins of the last draft, and stating that he "drew for 100 piles;" that he annexed "the Dixie's bill of lading for 400 piles," which was plainly an incorrect statement; and that "other piles would be coming in all next week," and urging them not to fail to accept the draft,—would seem to have been the more probable ground of acceptance of the last draft than any reliance on the bill of lading, which did not purport to give the full number of 400 piles. The piles being subsequently received, there was no loss of them. The cost of bringing them to New York would constitute no claim of damage against the barge, because she never was under any obligation to bring more than she did bring, and, in any event, Vanderbilt & Hopkins would be obliged to pay the freight on delivery, besides the $3.50 per pile. No damage arises from the delay in arrival, because the contract between Vanderbilt & Hopkins and Doughtrey did not bind the latter to delivery of the piles contracted for within any definite period; much less had the Dixie any such contract as to make her liable for any such special damage. The claim of Mr. Gillies is altogether remote.

3. Under the peculiar circumstances of a delivery of a cargo of piles into the water along-side, the vessel was entitled to security for freight before delivery, or else to payments on account while the discharge was proceeding. The delay for which demurrage is claimed arose mostly through the negotiations on this subject. These negotiations by the letter of the counsel first employed presented to the consignee an option, which was only terminated on the day before the discharge began. I allow, therefore, one day's demurrage, and no more, as there was no delay in the discharge afterwards. Decree for the libelants Isham for $1,-025, with interest and costs, and for the dismissal of the cross-libel, with costs.